| | | |
|---|---|---|
| In re | ) | Case No. 04-02511 |
| | ) | Chapter 13 |
| LEHUA HOOPAI, | ) | |
| | ) | |
| Debtor. | ) | Re: Docket No. 12 |
| _____ | ) | |

**MEMORANDUM DECISION ON**
**MOTION FOR RELIEF FROM AUTOMATIC STAY**

Hawaii has two sets of statutes which permit the foreclosure of mortgages on real estate without judicial action. The mortgagee in this case proceeded under the older statutory scheme. The mortgagor filed a chapter 13 bankruptcy petition three days after the mortgagee conducted the foreclosure auction but before the mortgagee recorded the affidavit of sale which the statute requires. The mortgagee argues that the mortgaged property is not property of the bankruptcy estate because the foreclosure auction divested the debtor of her interest. The mortgagee contends that the automatic stay should be terminated so that the mortgagee can complete the remaining steps of the foreclosure process, which the mortgagee characterizes as "ministerial." Interpreting the applicable statute, I conclude that a non-judicial foreclosure does not extinguish the mortgagor's interest in the property until the statutory affidavit is recorded. Therefore, I conclude that the property is part of the bankruptcy estate and that the

automatic stay should not be lifted.

## FACTS

On December 22, 1998, debtor Lehua Hoopai signed a promissory note in favor of Countrywide Home Loans, Inc. ("Countrywide"), in the original principal amount of $97,137.00 and a first mortgage to secure the note.

Ms. Hoopai defaulted in her obligations under the note and mortgage, and Countrywide instituted non-judicial foreclosure proceedings under Haw. Rev. Stat. §§ 667-5 – 667-10. Ms. Hoopai does not deny that the note and mortgage are valid and enforceable or that Countrywide complied with all applicable requirements to collect the debt and foreclose the mortgage under the statute.

The foreclosure auction was first scheduled for April 23, 2004. On that day, before the auction was held, Ms. Hoopai commenced a chapter 11 case (no. 04-01070). Ms. Hoopai was not represented by counsel. Both the Office of the United States Trustee and Ms. Hoopai moved to dismiss the chapter 11 case. This court dismissed the case on September 8, 2004.

Countrywide resumed the non-judicial foreclosure proceedings and held the auction on October 12, 2004. The highest bid, in the amount of $159,000, was made by James Pelosi and Marcelle Loren as Co-Trustees of the Maluhia Trust. They paid the full purchase price at the conclusion of the auction.

2

On October 15, 2004, Ms. Hoopai (this time represented by counsel) commenced this chapter 13 case.[1] Countrywide immediately filed a motion for relief from the automatic stay so that it could record the affidavit required by Haw. Rev. Stat. § 667-5 and complete the foreclosure process. The Maluhia Trust joined in the motion. Ms. Hoopai did not object to the request for relief to record the affidavit (reserving her contention that the property nonetheless belonged to the estate) but otherwise opposed the motion. The court granted leave to file the affidavit following a preliminary hearing. A final hearing to address the balance of the motion took place on December 6, 2004. The parties have submitted post-hearing memoranda as directed.

In the meantime, Ms. Hoopai has filed a motion for approval of a sale of the mortgaged property for $300,000.00. That motion has not yet come on for hearing.

---

[1] The schedules of assets which Ms. Hoopai filed in the chapter 11 case include assets which she did not list in her chapter 13 case. She claims that she never owned those assets and they were erroneously listed in the first case. Misstatements in the debtor's schedules can, in appropriate circumstances, have important consequences and may constitute "cause" for granting relief from the automatic stay. I conclude that the record established to date does not establish cause to lift the stay, but the discrepancy in the schedules may be relevant at other points and for other purposes in this case.

3

# DISCUSSION

## A. *A Non-judicial Foreclosure under Haw. Rev. Stat. § 667-5 Divests The Mortgagor's Interest Only When the Required Affidavit is Recorded*

Haw. Rev. Stat. §§ 667-5 through 667-10 provide for non-judicial foreclosure of mortgages containing a power of sale. The principal provision, section 667-5, has been in effect without significant change since 1874. Haw. Sess. L. Ch.XXXIII § 1 (1874). As a consequence, the statutory language is archaic and ambiguous.

> When a power of sale is contained in a mortgage, the mortgagee, or the mortgagee's successor in interest, or any person authorized by the power to act in the premises, may, upon a breach of the condition, give notice of the mortgagee's, successor's, or person's intention to foreclose the mortgage and of the sale of the mortgaged property, by publication of the notice once in each of three successive weeks (three publications), the last publication to be not less than fourteen days before the day of sale, in a newspaper having a general circulation in the county in which the mortgaged property lies; and also give such notices and do all such acts as are authorized or required by the power contained in the mortgage. Copies of the notice shall be filed with the state director of taxation and shall be posted on the premises not less than twenty-one days before the day of sale.
>
> Any sale, of which notice has been given as aforesaid, may be postponed from time to time by public announcement made by the mortgagee or by some person acting on the mortgagee's behalf. The mortgagee shall,

4

within thirty days after selling the property in pursuance
of the power, file a copy of the notice of sale and the
mortgagee's affidavit, setting forth the mortgagee's acts in
the premises fully and particularly, in the bureau of
conveyances.

The affidavit and copy of the notice shall be recorded and
indexed by the registrar, in the manner provided in
chapter 501 or 502, as the case may be.

This section is inapplicable if the mortgagee is
foreclosing as to personal property only.

Section 667-8 provides that the affidavit "shall be admitted as evidence that the power of sale was duly executed."

Ms. Hoopai argues that the mortgagor retains an interest until the mortgagee records the affidavit. Countrywide and the Maluhia Trust argue that the mortgagor's interest is divested when the auction is concluded and that the subsequent filing of the affidavit is merely ministerial.

The "plain language" approach to statutory construction is unhelpful here. The language of section 667-5 is far from plain. The statute simply does not say when title passes from the mortgagor to the successful bidder. Similarly, the statute does not say how title passes. Although the statute does not mention it, Countrywide states that it is customary for the foreclosing lender to execute a deed of the property in favor of the successful bidder.

The Hawaii case law is sparse. Most of the decided cases concern

5

judicial foreclosures. Hoge v. Kane, 5 Haw. App. 533, 670 P.2d 36 (1983); In re Kealia Beach Village, Inc., 18 B.R. 133 (Bankr. D. Hawaii 1982) (Chinen, J.)[2]; Cooper v. Island Realty Co., 16 Haw. 92 (1904). These decisions do not shed light on the statutes governing non-judicial foreclosures. Cases from other jurisdictions with different legislatures and different statutory language are also unhelpful.

The closest case is Brown v. Bannister, 15 Haw. 271 (1903), where a judgment creditor of the mortgagor levied on the mortgaged property a few months before the mortgagee conducted a foreclosure sale and then, nine days after the sale, attempted to acquire the property by paying the successful bidder "the amount of the purchase money and expenses." Noting that Hawaii has no statutory right of redemption, the court held that the judgment creditor was not entitled to the property. The decision does not indicate whether the foreclosing mortgagee had recorded the affidavit before the judgment creditor attempted to redeem the property.

---

[2] I respectfully disagree with the decision in Kealia that, in a judicial foreclosure case, the mortgagor's interest is extinguished when the auction is held. Kealia is based on the correct statement that Hawaii has no statutory right of redemption. It is customary, however, for the Hawaii state courts to permit mortgagors to stop the foreclosure by curing the default at any time prior to the confirmation of the sale. Hoge v. Kane, 5 Haw. App. 533, 670 P.2d 36 (1983). This equitable right of reinstatement continues after the auction sale and does not expire until the sale is confirmed.

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 70   Filed  01/12/05   Page 6 of 12

Other Hawaii statutes and rules, however, demonstrate that Ms. Hoopai's position is correct. "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." Haw. Rev. Stat. § 1.16. See also State v. Batson, 99 Hawaii 118, 53 P.3d 257 (2002).

In 1998, the legislature enacted an alternative procedure for non-judicial foreclosures in Haw. Rev. Stat. §§ 667-21 through 667-42. A foreclosure sale under the new statute is "considered completed" only when the mortgagee's affidavit and a conveyance document in favor of the purchaser are recorded. Haw. Rev. Stat. § 667-33(b). The new statutes apply only to mortgages executed after July 1, 1999 and are therefore inapplicable to this mortgage. Nevertheless, the clear terms of the new statutory scheme help explain the ambiguous terms of the old statute.

Haw. Rev. Stat. § 514A-90(g) (2003) provides that the homeowners association of a condominium may make a special assessment against a purchaser in a non-judicial foreclosure sale in an amount equal to the regular monthly assessments which accrued against the apartment during the six months prior to "completion" of the foreclosure sale. Subsection (i) provides that "completion" of a non-judicial foreclosure sale occurs "when the affidavit required under section

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 70   Filed 01/12/05   Page 7 of 12

667-5 is filed . . . ." Section 514A-90 thus indicates that a non-judicial foreclosure sale is not "complete" until the requisite affidavit is filed.

Similarly, rule 59 of the Land Court provides that, if the mortgaged property is registered land covered by chapter 501 of the Hawaii Revised Statutes, the registrar will issue a certificate of title to the purchaser at a non-judicial foreclosure sale:

> [w]hen the affidavit required by HRS § 667-5 is recorded with the assistant registrar, and the purchaser presents the deed which contains the proper number of the certificate of the land affected and also contains or has endorsed upon it a full memorandum of all encumbrances affecting the land, if any, or a statement that there are no outstanding encumbrances affecting the land, under the power of sale to the assistant registrar for recordation . . . .

Thus, all of the relevant statutes and rules show that title passes in a non-judicial foreclosure sale when the affidavit is recorded, not when the auction is held.

Countrywide's interpretation also runs afoul of the rule that courts must interpret statutes in a way which gives meaning to all of the statutory language. In re City and County of Honolulu Corporation Counsel, 54 Haw. 356, 373, 507 P.2d 169, 178 (1973) ("It is a cardinal rule of statutory construction that a statute ought upon the whole be so constructed that, if it can be prevented, no

8

clause, sentence or word shall be superfluous, void, or insignificant.") Countrywide's interpretation renders the statutory words relating to the affidavit insignificant. If Countrywide were correct, foreclosing mortgagees would have little if any reason to file the affidavit at all, let alone within the thirty day time limit, because their failure to do so would have no consequences. The legislature could not have intended to require mortgagees to do a meaningless act.[3]

Countrywide and the Maluhia Trust also argue that, when the auction ends and the mortgagee accepts the high bid, an enforceable contract is formed between the high bidder and the mortgagee (acting on behalf of the mortgagor, by virtue of the power of sale). This may or may not be true under section 667-5; all of the cases they cite arise in different contexts, and section 667-5 says nothing about the rights of the successful bidder. Even if they are correct, however, the contract is subject to a condition subsequent – timely recording of the affidavit – the failure of which vitiates the contract.[4]

---

[3] Countrywide states in its moving papers that the failure timely to file the affidavit renders the sale void. This cannot be squared with Countrywide's assertion that filing the affidavit is merely ministerial.

[4] At the final hearing, I asked Countrywide's counsel whether Countrywide had recorded any notice of the foreclosure sale. I suggested that, if Countrywide did not do so (and nothing in the statute appears to require a foreclosing lender to do so), any rights which flow from the auction sale might be avoidable under section 544(a)(3) of the Bankruptcy Code. After the hearing, Countrywide provided evidence that it did record notice of the sale in the Bureau of Conveyances. If the foreclosing mortgagee had not taken this step, the mortgagor might have additional support for its position.

9

**B.     Bankruptcy Code § 1322(c)(1) Does Not Preclude the Debtor From Selling the Property**

Countrywide argues that, even if the foreclosure sale did not cut off Ms. Hoopai's interest in the property, she can not cure her defaults by virtue of section 1322(c)(1) of the Bankruptcy Code. That section provides that:

> Notwithstanding subsection (b)(2) and applicable nonbankruptcy law . . . a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) and (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law . . . .

Prior to 1994, courts divided on the question of when foreclosure proceedings had progressed so far that chapter 13 debtors could not cure and reinstate the defaulted mortgage. Congress enacted section 1322(c)(1) as part of the 1994 amendments to the Bankruptcy Code in an attempt to settle the issue. Unfortunately, Congress did not draft section 1322(c)(1) as clearly as it might have. As a result, the decisions are still deeply split. 2 Keith M. Lundin, Chapter 13 Bankruptcy § 130.1 (3d ed. 2000 & Supp. 2004). I need not weigh in on this issue, however, because section 1322(c) does not apply to this plan.

By its terms, section 1322(c) is an exception to section 1322(b)(2). That subsection provides that a plan may not "modify the rights" of the holder of "a claim secured only by a security interest in real property that is the debtor's

10

principal residence . . . ." Ms. Hoopai does not propose a modification of Countrywide's rights. She intends to sell the property and pay Countrywide's claim immediately and in full.

Further, section 1322(c)(1) by its terms applies only to sections 1322(b)(3), which provides that a plan may provide for a cure or waiver of defaults, and section 1322(b)(5), which provides that a plan may provide for "cure and maintenance" of defaulted claims. Ms. Hoopai does not propose to do either of these things and her plan does not invoke section 1322(b)(3) or (5). Instead, Ms. Hoopai proposes to sell the property and pay Countrywide in full pursuant to section 1322(b)(8). Therefore, section 1322(c)(1) does not apply to Ms. Hoopai's plan.[5]

## **CONCLUSION**

When Ms. Hoopai filed her chapter 13 petition, the non-judicial foreclosure proceedings had not progressed so far as to eliminate her interest in the real property. Accordingly, the property is property of the estate. Section 1322(c)(1) does not preclude Ms. Hoopai from selling the property as her plan provides. Therefore, a separate order denying Countrywide's motion for relief

---

[5]There is also a factual dispute about whether the property is Ms. Hoopai's residence. The record does not permit me to resolve this question and, in light of my interpretation of section 1322(c)(1), it is not necessary for me to do so.

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 70   Filed 01/12/05   Page 11 of 12

from the automatic stay will enter.

      DATED: Honolulu, Hawaii, January 12, 2005.

/s/ Robert J. Faris
United States Bankruptcy Judge