UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In re | ) | Case No. 04-02511 |
|---|---|---|
| | ) | Chapter 13 |
| LEHUA HOOPAI, | ) | |
| | ) | |
| Debtor. | ) | Re: Docket No. 178, 199 |
| _____ | ) | |

**MEMORANDUM OF DECISION ON
ALLOWANCE OF ATTORNEYS' FEES
AND DISPOSITION OF SUPERSEDEAS BOND**

The debtor in this chapter 13 case successfully pressed a novel legal argument in this court and on appeal to the district court. She established that a non-judicial foreclosure auction does not immediately extinguish the debtor's interest in the mortgaged property. This enabled her to sell the property for a higher price. But because the high bidder at the foreclosure auction appealed and obtained a stay pending appeal, substantial interest, attorneys' fees, and costs have accrued. In order to avoid a Pyrrhic victory and maximize her equity in the property, the debtor seeks to reduce these items and shift them to the mortgagee and the high bidder. I conclude that, for the most part, she is not entitled to do so.

I.      FACTS

On or about December 22, 1998, debtor Lehua Hoopai signed a promissory note in favor of Island Community Lending Corporation in the principal amount of

$97,137.00. The note was secured by a first mortgage which encumbered real property located at 66-1253 Ahuli Circle, Kamuela, Hawaii. The note and mortgage were assigned to Countrywide Home Loans, Inc. ("Countrywide") on December 22, 1998. On or around May 19, 2000, Ms. Hoopai obtained another loan from Countrywide secured by a second mortgage on the property. The property was not Ms. Hoopai's residence.

Ms. Hoopai defaulted on the two loans from Countrywide. On December 12, 2003, Countrywide filed a judicial action in the Circuit Court of the Third Circuit, State of Hawaii, to foreclose on its second mortgage. In March 2004, Countrywide instituted a non-judicial power of sale foreclosure on its first mortgage pursuant to Haw. Rev. Stat. §§ 667-5 through 667-10. The foreclosure auction was originally scheduled for April 23, 2004. Ms. Hoopai preempted the auction, however, by filing a chapter 11 bankruptcy proceeding that day (case no. 04-01070).

The chapter 11 case had many hallmarks of a bad faith filing. The debtor, who was not represented by counsel, claimed as assets trademarks and copyrights covering her own name; she failed to list the mortgagee as a creditor; her schedules and statement of financial affairs contained numerous questionable entries; she had nothing close to the amount of income necessary to service her secured debts; and she took few if any steps to prosecute her case. The Office of the U.S. Trustee

2

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 215   Filed 08/30/06   Page 2 of 19

moved to dismiss or convert the case. Eventually, Ms. Hoopai filed her own motion to dismiss (without stating any reasons). The proceeding was dismissed on September 8, 2004, and Countrywide rescheduled the foreclosure auction for October 15, 2004.

Unbeknownst to Countrywide, Ms. Hoopai was attempting to sell the property. She signed a Deposit Receipt Offer and Acceptance with Anna Fern White on September 21, 2004. Ms. Hoopai also allowed Ms. White to take possession of the property.

On October 15, 2004, Countrywide conducted the non-judicial foreclosure auction. Countrywide bid $158,935, which was the full amount owed under its mortgages at that date. The highest bid, in the amount of $159,000, was made by James Pelosi and Marcelle Loren as Co-Trustees of the Maluhia Trust ("Maluhia"). Maluhia paid the full purchase price at the conclusion of the auction.

On October 18, 2004, three days after the auction, Ms. Hoopai commenced another bankruptcy case, this time under chapter 13. Countrywide immediately filed a motion for relief from the automatic stay so that it could complete the foreclosure process. Countrywide argued that the foreclosure auction extinguished Ms. Hoopai's interest in the property, that the property was therefore not property of the estate, and that the automatic stay should not prevent Countrywide from

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 215   Filed 08/30/06   Page 3 of 19

concluding the sale. Maluhia joined in the motion. For the reasons set out in the Memorandum Decision on Motion for Relief from Automatic Stay entered on January 12, 2005 (see dockets 70 and 74), the court held that the property was property of the estate and denied Countrywide's motion to terminate the automatic stay.

In the meantime, Ms. Hoopai filed a motion for approval of a sale of the mortgaged property to Ms. White for $300,000.00. The court granted the motion at a hearing held on January 24, 2005. Ms. Hoopai's chapter 13 plan was confirmed on February 23, 2005.

Maluhia timely appealed the court's order denying the motion to terminate the automatic stay and the order granting the motion for approval to sell the property. Subsequently, Maluhia moved for a stay of the sale pending appeal. The court granted the stay and required Maluhia to post a supersedeas bond in the amount of $335,000. The court required Ms. Hoopai to keep the property insured and to pay all real property taxes and assessments. The court also ordered that Ms. White, the prospective purchaser who was already in possession of the property, pay monthly rent in the amount of $1,250 and required the debtor to make reasonable efforts to re-rent the property if Ms. White or any subsequent tenant vacated it. The rent was to be deposited in a trust account. The debtor was

authorized to use the rent money to pay insurance, taxes and assessments "and for no other purpose," and debtor's counsel was to "hold [the trust fund] subject to this order and this court's further orders." In addition, the court reserved jurisdiction "to determine all issues and controversies relating to or arising out of the bond and the stay pending appeal, including the disposition of the rent fund and the proceeds of the bond, and to enforce or modify this order."

On appeal, the United States District Court for the District of Hawaii affirmed the bankruptcy court's orders. Final judgment was entered on November 25, 2005.

The sale of the property to Ms. White closed on January 31, 2006. At closing, Countrywide was paid $176,927.72, representing principal, interest, late charges, customer trust fund shortages, and miscellaneous other charges. Countrywide also claimed attorneys' fees and certain other items which the debtor disputed. By agreement of the parties, escrow retained the remaining sales proceeds ($120,319.59) pending further order of the court.

On March 2, 2006, Ms. Hoopai filed a Motion to Determine Countrywide Home Loans, Inc.'s Entitlement To Attorneys' Fees; To Determine Debtor's Entitlement to Attorneys' Fees; To Allow Debtor to Execute on Bond; and To Determine Disposition of Rent Trust Fund (docket no 178). The motion asked the

5

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 215   Filed 08/30/06   Page 5 of 19

court to determine that:

   (1) Countrywide was entitled to substantially less attorneys' fees than it was demanding;

   (2) the debtor was entitled to recover her attorneys' fees from either Countrywide or Maluhia;

   (3) the debtor was entitled to recover from the supersedeas bond (a) the interest that accrued on Countrywide's mortgages during the appeal, (b) the real property taxes, insurance premiums, and repair expenses incurred by the debtor during the appeal, (c) certain expenses of establishing the rent trust fund, and (d) any attorneys' fees which the court awarded to Countrywide; and

   (4) the rent trust fund should be retained by the debtor or paid to the chapter 13 trustee to fund her plan.

At the May 18, 2006 hearing, the court issued a tentative oral ruling but required the parties to file additional memoranda on one issue. Before all of the supplemental memoranda were filed, the debtor filed a motion requesting that the court reconsider portions of its oral ruling. The issues raised in both motions are discussed below.

6

## II. COUNTRYWIDE'S ATTORNEYS' FEES

### A. Countrywide's Fees Are Within the Scope of the Fee Provisions of the Mortgages

Ms. Hoopai argues that Countrywide's mortgages do not permit Countrywide to recover most of its attorneys' fees. She argues that Countrywide's challenge to her interest in the real property and the fees incurred in protecting Countrywide's oversecured claims cannot be characterized as "pursuing the remedies provided" in the mortgages.

The note which the first mortgage secures has a broad attorneys' fee provision:

> If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees <u>for enforcing this Note</u> to the extent not prohibited by applicable law. [Emphasis added.]

Similarly, Countrywide's first mortgage provides:

> 18. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and <u>any other remedies permitted by applicable law</u>. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence. [Emphasis added.]

Paragraph 7 of the first mortgage expands upon these provisions:

> If . . . there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy . . .), then <u>Lender may do and pay whatever is necessary to protect the value of</u>

7

the Property and Lender's rights in the Property . . . . [Emphasis added.]

Countrywide's second mortgage[1] contains similar provisions. Paragraph 17 gives Countrywide the right to "declare all of the sums secured by this Mortgage to be immediately due and payable without further demand" and "invoke the power of sale and any other remedies permitted by applicable law" if borrower's breach of any covenant or agreement is not cured, and provides that "[l]ender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees."

In this case, all of the work of Countrywide's attorneys was "necessary to protect [Countrywide's] rights in the Property" and to "pursu[e] . . . remedies permitted by applicable law." Thus, Countrywide's fees are within the scope of the fee provisions and the debtor is responsible for paying Countrywide's fees.

### B. Countrywide is a "Prevailing Party" under Haw. Rev. Stat. § 607-14

Under Hawaii law, "[n]o attorney's fees may be awarded as damages or costs unless so provided by statute, stipulation, or agreement." Food Pantry, Ltd. v. Waikiki Business Plaza, Inc., 58 Haw. 606, 618, 575 P.2d 869, 878 (1978). Haw.

---

[1] The note which the second mortgage secures is not included in the record.

8

Rev. Stat. § 607-14 regulates contractual attorneys' fee provisions:

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five percent of the judgment.

Identifying the "prevailing party" can be difficult. "[W]here a party prevails on the disputed main issue, even though not to the extent of his original contention, he will be deemed to be the successful party for the purpose of taxing costs and attorney's fees." Food Pantry, 58 Haw. at 620, 575 P.2d at 879. "The trial court is required to first identify the principal issues raised by the pleadings and proof in a particular case, and then determine, on balance, which party prevailed on the issues." Village Park Community Association v. Nishimura, 108 Haw. 487, 503, 122 P.3d 267, 283 (Haw. App. 2005).

The task is even more complicated in multi-party litigation. "In multiple parties cases, a party may be a losing party *vis-a-vis* two other parties, and a party may be a loser as to one party and a winner as to another." Rosa v. Johnston, 3

9

U.S. Bankruptcy Court - Hawaii    #04-02511    Dkt # 215    Filed  08/30/06    Page 9 of 19

Haw. App. 420, 431, 651 P.2d 1228, 1236 (Haw. App. 1982).

As between Countrywide and the debtor, the "disputed main issue" was enforcement of Countrywide's liens and payment of Countrywide's secured claim. Countrywide prevailed on that issue; it will be paid the full amount of its claim. Although the court ruled in favor of the debtor on the issue of whether the property belonged to the bankruptcy estate, that issue was a subsidiary issue. Thus, "on balance," Countrywide is the prevailing party in its dispute with the debtor, and Countrywide is entitled to an award of its attorneys' fees.

**C.   Section 506(b) is Irrelevant in Determining Countrywide's Entitlement to Post-Confirmation Fees**

The debtor argues that Countrywide is not entitled to post-confirmation fees under 11 U.S.C. § 506(b). This contention is not relevant.[2] The debtor concedes that the lender can recover attorneys' fees incurred in the post-confirmation period if applicable state law so provides. For the reasons set forth in the preceding sections of this decision, Countrywide's fees are recoverable under state law.

---

[2]The contention is also incorrect in at least one respect. The argument erroneously assumes that section 506(b) creates a right to attorneys' fees. But the section provides that the secured claim includes "any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." In other words, fees are recoverable in bankruptcy only if they would be recoverable outside of bankruptcy. Section 506(b) governs the secured status of a claim; it does not create a claim that would not exist outside of bankruptcy. 4 Collier on Bankruptcy ¶ 506.04[3], at 506-113 (15th rev. ed. 2006)("fees, costs and charges are not allowable under section 506(b), notwithstanding the existence of oversecurity, in the absence of a contractual or statutory entitlement").

10

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 215   Filed   08/30/06   Page 10 of 19

Section 506(b) therefore is inapplicable.

**D.     Countrywide's Fees Are Reasonable**

The debtor asserts that portions of Countrywide's fees are unreasonable. I have carefully reviewed each objection and the underlying timesheets, and I find that Countrywide's fees, as adjusted, are reasonable.

Countrywide's fee request must be considered in context. The debtor, who previously filed a bad faith chapter 11 petition, filed a second bankruptcy case <u>after</u> a non-judicial foreclosure auction. The debtor's belated second bankruptcy filing presented a novel issue of Hawaii state law: at what point in the non-judicial mortgage foreclosure process is the mortgagor's interest extinguished? The applicable statute is ambiguous and there was no case law on point. Countrywide was entitled to litigate the issue and it did so in an efficient and effective manner. Maluhia was entitled to appeal and it was reasonable and prudent for Countrywide to monitor the appeal.

The debtor argues that Countrywide should have taken a passive posture in this case because, according to the debtor, Countrywide was assured of payment because of the property's value. Countrywide's decision to take a more active role[3] was reasonable. The high bid at the foreclosure auction was sufficient to pay

---

[3]Countrywide could have taken an even more active role in the case than it did. After I ruled in favor of the debtor and Maluhia appealed, Countrywide decided that it would not

11

Countrywide on the day of the auction, but not for long thereafter as interest accrued. The debtor contended that she had a buyer for the property, but, in light of the debtor's prior bad faith bankruptcy filing, Countrywide was not obligated to trust or rely upon her.

In this context, I turn to the debtor's specific objections.

The debtor objects to about $20,000 in fees which Countrywide incurred during the appeal. The debtor points out that Countrywide was not a party to the appeal. Countrywide was not obliged, however, simply to wait for the outcome of the appeal. It was reasonable for Countrywide to monitor the appeal and confer with the purchasers' counsel. Moreover, Countrywide had standing to participate in the appeal; if Countrywide had chosen to file briefs, its fees would have been much higher.

The debtor objects to billings by multiple attorneys and paralegals for meetings. There is no per se rule that only one professional in a firm can charge for an intra-firm meeting. The time spent by multiple professionals in meetings was reasonable in the circumstances of the case.

The debtor objects to the time spent on certain tasks, including filing the

---

participate in the appeal but instead would monitor the proceedings and consult with the purchaser. This decision saved money for the debtor; if Countrywide had participated fully in the appeal, as was its right, Countrywide's fees would have been substantially higher.

12

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 215   Filed  08/30/06   Page 12 of 19

compliance affidavit for the non-judicial foreclosure sale and preparing an ex parte motion to shorten time. I have carefully reviewed all of the time entries and have considered the explanations offered by Countrywide's counsel. I find that the time spent on these tasks was reasonable.

The debtor contends that some tasks done by an attorney should have been done by clerical staff. I have reviewed counsel's explanation for each such task and find the charges reasonable.

The debtor claims that some tasks were doubly-billed. Countrywide's attorney has acknowledged one error and has made the appropriate adjustment. I accept Countrywide's explanation for the remaining challenged entries.

### III. THE DEBTOR IS NOT ENTITLED TO SHIFT HER ATTORNEY'S FEES TO MALUHIA

Ms. Hoopai contends that Maluhia must pay her attorneys' fees because she was the prevailing party. This contention is incorrect. Under Hawaii law, each party bears its own attorneys' fees unless an agreement or a statute provides otherwise. There was no contract between the debtor and Maluhia, let alone a contract which included an attorneys' fee provision. The statute cited by the debtor, Haw. Rev. Stat. § 607-14, applies only to "an action in the nature of assumpsit." "Assumpsit" is "a common law form of action which allows for the recovery of damages for the non-performance of a contract, express or implied,

13

written or verbal, as well as quasi contractual obligations." S. Utsunomiya Enterprises, Inc. v. Moomuku Country Club, 76 Haw. 396, 399-400, 879 P.2d 501, 504-05 (1994). The debtor does not claim that she had an express, implied, or quasi-contract with Maluhia, and she asserted no claim for damages against Maluhia. See Shanghai Inv. Co., Inc. v. Alteka Co., Ltd., 92 Haw. 482, 502, 993 P.2d 516, 536 (2000) (claim for specific performance of a contract is not "in the nature of assumpsit"). Thus, the debtor must pay her own attorneys' fees.

## IV. THE DEBTOR IS NOT ENTITLED TO SHIFT COUNTRYWIDE'S FEES TO MALUHIA

The debtor asserts that Maluhia should pay the fees incurred by Countrywide during the appeal because those fees would not have accrued but for the stay pending appeal. The "American Rule" on attorneys fees generally precludes a party from requiring another party to pay attorneys' fees. The debtor urges the court to apply the "tort of another" doctrine, adopted by Hawaii in Uyemura v. Wick, 57 Haw. 102, 551 P.2d 171 (1976).

> [W]here the wrongful act of the defendant has involved the plaintiff in litigation with others, or placed him in such relations with others as makes it necessary to incur expenses to protect his interest, such expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act, and may be recovered as damages.

Id. at 108-09, 551 P.2d at 176; see also Fought & Co. Inc. v. Steel Engineering and Erection, Inc., 87 Haw. 37, 951 P.2d 487 (1998), citing Uyemura v. Wick.

14

Among other things,

> the plaintiff must establish . . . that the plaintiff became involved in a legal dispute either because of a breach of contract by the defendant, or because of defendant's tortious conduct, that is, that the party sought to be charged with the fees was guilty of a wrongful or negligent act or breach of agreement . . . ."

Uyemura v. Wick, 57 Haw. at 109, 551 P.2d at 176, quoting 1 S. Speiser, Attorneys' Fees § 13:4, at 624-25 (1973). The Uyemura rule does not apply here because it requires at least "wrongful conduct" and Maluhia did nothing wrong.

## V.    APPLICATION OF THE BOND AND RENT TRUST FUND

The debtor asserts that Maluhia (or Maluhia's surety on the supersedeas bond) should pay the interest, insurance premiums, real property taxes, repair expenses, and miscellaneous expenses the debtor incurred during the pendency of the appeal. Maluhia does not dispute the debtor's claim for reimbursement but argues that the amounts held in the rent trust fund should be used for that purpose first. The debtor disagrees, arguing that the rent money constitutes the profits from her property and therefore belong to her, or her estate.

The purpose of a supersedeas bond is to assure that a successful appellee can be restored to the status quo and made whole. Shanghai Inv. Co., Inc. v. Alteka Co. Ltd., 92 Haw. 482, 503, 993 P.2d 516, 537 (2000) ("The purpose of posting a supersedeas bond is to preserve the status quo pending appeal."); Enos v. Pacific Transfer & Warehouse, Inc., 79 Haw. 452, 454 n. 2, 903 P.2d 1273, 1275 n. 2

15

(1995) ("A supersedeas bond is '[a] bond required on one who petitions to set aside a judgment or execution and from which the other party may be made whole if the action is unsuccessful.'")

In order to restore the status quo without making the appellee more than "whole," the losses suffered by the appellee must be netted against any gains realized. For example, when a lessee breaches a lease, the lessor's damages are the unpaid rent under the lease minus the fair rental value of the property. <u>Malani v. Clapp</u>, 56 Haw. 507, 516-17, 542 P.2d 1265, 1271 (1975). Allowing the landlord to collect the unpaid lease rent without mitigation based on the fair rental value of the property would give the landlord a double recovery of rent, once from the defaulting tenant, and again from a new tenant.

Here, Ms. Hoopai incurred interest, property taxes, property insurance, and repair and maintenance expenses while the appeal was pending. She would not have incurred these expenses but for the stay pending appeal. These are clearly losses which she is entitled to recover. She also realized rental income during the appeal, however, which she would not have collected absent the stay pending appeal. Allowing her to keep the rent trust fund would put her in a better position than she would have been had the appeal not been taken and would create a windfall to her. In order to avoid a double recovery, this gain must be netted against the losses. Thus, to calculate Ms. Hoopai's net loss, one must apply the

16

rent income to the expenses.

The cases cited by Ms. Hoopai in support of her position are distinguishable, unpersuasive, and not binding. The only case cited that directly supports the debtor's position is <u>Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Prods., Inc.</u>, 179 Ariz. 456, 880 P.2d 676 (Ariz. Ct. App. 1994), a condemnation case in which the court declined to reduce the appellee's recovery from a supersedeas bond based on the rents collected and the appreciation of the land during the appeal. The opinion is unpersuasive because the court did not state any reasons for this rule. The court also noted that loss of sale opportunity damages, including lost interest from the sale proceeds, might have been offset against the appreciation had the appellee pursued those claims. However, since the appellee only pursued out of pocket costs, the lower court was not required to consider the rental payment received or the appreciation in the land's value. No comparable election has been made in this case.

Ms. Hoopai also argues that she is entitled to keep the rent money under the collateral source rule. Under that rule, "benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages." <u>McLean v. Runyon</u>, 222 F.3d 1150, 1155-56 (9th Cir. 2000). "The primary justifications for the collateral source rule are that the defendant should not get a windfall for collateral benefits received by the plaintiff

17

and that the defendant should not profit from benefits that the plaintiff has paid for himself." Id.  The collateral source doctrine sometimes means that the victim is overcompensated, but that burden is justified by the interest in deterring wrongful conduct.

>The collateral source doctrine is not applicable to a case such as this one.
>
>The collateral source rule arises primarily in connection with tort damages, and presupposes some wrongful act by the breaching party. This rule has been applied in connection with breach of contract, when there is a tortious or negligence component to the breach, or when the equitable balance is such that any windfall should not benefit the wrongdoer.

LaSalle Talman Bank v. United States, 317 F.3d 1363, 1372 (Fed. Cir. 2003).  In a case such as this one, in which the appellant is not guilty of any wrongful conduct and where only financial losses are involved, it is appropriate to apply a more precise compensatory measure of damages than would result under the collateral source doctrine.

The debtor asserts that the rental proceeds should not be applied to her expenses because, upon confirmation of her chapter 13 plan, the real property revested in her and she was free to use the property as she desired. In the first place, the factual premise of the argument is incorrect; the debtor was not free to use the property as she pleased.  The order imposing the stay pending appeal required Ms. White to pay rent and required the debtor to "use reasonable diligence

U.S. Bankruptcy Court - Hawaii   #04-02511    Dkt # 215   Filed  08/30/06   Page 18 of 19

to find another tenant at reasonable rents" if Ms. White moved out. More importantly, however, the revesting of the property is irrelevant to the calculation of the debtor's actual loss.

## VI. CONCLUSION

A separate judgment will enter providing that:

(1)     Countrywide is entitled to recover from the net proceeds of sale all amounts remaining unpaid on its claims, including interest and reasonable attorneys' fees and costs in the amount of $83,542.87,

(2)     Ms. Hoopai is entitled to recover from the rent trust fund, and to the extent the rent trust fund is insufficient, from Maluhia or its surety: (a) the interest that accrued on Countrywide's mortgages during Maluhia's appeal, (b) the real property taxes, insurance premiums, and repair expenses incurred by the debtor during the appeal, in the amounts requested by the debtor, and (c) the requested expenses of establishing the rent trust fund, and

(3)     Ms. Hoopai's motions are denied in all other respects.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **08/30/2006**

19

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 215   Filed  08/30/06   Page 19 of 19