UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In re | Case No. 04-02511 |
|---|---|
| LEHUA HOOPAI, | Chapter 13 |
| Debtor. | Related Docket No.: 254 |

**AMENDED MEMORANDUM OF DECISION ON MOTION FOR TURNOVER OF POST-PETITION ATTORNEYS' FEES AND COSTS**

I.   INTRODUCTION

This court held that the Debtor's mortgage lender, Countrywide Home Loans, Inc. ("Countrywide"), was the "prevailing party" in protracted litigation with the Debtor and allowed Countrywide to collect $83,542.87 in attorneys' fees and costs from the proceeds of the Debtor's real property. The Bankruptcy Appellate Panel ("BAP") reversed, holding that the Debtor, not Countrywide, was the "prevailing party." The BAP remanded the case to this court. Countrywide's appeal to the Ninth Circuit Court of Appeals is pending.

The question is whether this court can require Countrywide to set aside funds or post a bond to ensure that the Debtor will be able to recover from Countrywide in the event Countrywide loses its appeal.

I conclude that, although the filing of a notice of appeal generally

divests the lower court of jurisdiction over the subject matter of the appeal, this court has jurisdiction to preserve the status quo during the pendency of the appeal, and that the Debtor is entitled to security for Countrywide's potential obligation to the Debtor.

II.     FACTS[1]

The Debtor filed a chapter 13 petition three days after Countrywide conducted a non-judicial foreclosure sale of the Debtor's real property. Countrywide held two mortgages on the property securing a total payment obligation of $158,935 on the petition date. The Maluhia Trust ("Maluhia") was the successful high bidder at the foreclosure auction with an offer of $159,000.

Countrywide and Maluhia argued that the foreclosure auction had extinguished the Debtor's interest in the property prior to the petition date. I held to the contrary, and the district court affirmed. I also approved the Debtor's sale of the property to a different buyer for $300,000. When the sale closed, Countrywide received $176,927.72 representing principal, interest, and miscellaneous charges. The remaining proceeds were held in escrow pending adjudication of a dispute

---

[1] The facts are set forth in more detail in In re Hoopai, 348 B.R. 528 (Bankr. D. Haw. 2006), reversed, In re Hoopai, __ B.R. __ , 2007 WL 1119913 (B.A.P. 9th Cir. Mar. 28, 2007).

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 267   Filed  08/29/07   Page 2 of 12

about the parties' right to recover attorneys' fees and costs.

After additional litigation, I ruled that Countrywide was entitled to recover $83,542.87 of attorneys' fees and costs because it was the "prevailing party" under the Hawaii statute regulating contractual attorney's fee provisions, Haw. Rev. Stat. § 607-14, and because the fees were reasonable.

The Debtor appealed to the BAP, which reversed. The BAP held that the Debtor, not Countrywide, was the prevailing party for purposes of Haw. Rev. Stat. § 607-14. The BAP remanded the case for determination of whether the Debtor, as prevailing party, is entitled to attorneys' fees in light of the Supreme Court's decision in <u>Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.</u>, 127 S. Ct. 1199 (2007).

Countrywide appealed the BAP's ruling to the Court of Appeals. Briefing is underway. Countrywide did not obtain a stay pending the appeal.

On July 18, 2007, the Debtor moved this court to require Countrywide to "remit" $79,598.08. The motion argues that, in light of the BAP's ruling, Countrywide is "improperly holding" $79,598.08, the post-petition portion of the $83,542.87 fee award. The motion requests an order requiring Countrywide to: (1) remit $79,598.08 to the clerk of the court; (2) deposit the funds into an interest-bearing bank account; or (3) post a supersedeas bond to protect the Debtor's

interest in the funds, as well as interest that accrues while the $79,598.08 is out of her or her bankruptcy estate's possession.

The Debtor initially asked for a set-aside or bond in the amount of $110,000. In a supplemental memorandum filed after the August 16, 2007, hearing on the motion, however, the Debtor requests that Countrywide be required to post a supersedeas bond in the amount of $250,000 to cover not only the $79,598.08 and interest accruing thereon, but also the Debtor's "expected entitlement to attorneys' fees and reimbursement for costs . . . ." The Debtor asks the court to take judicial notice of its order approving $68,511.02 in fees and $642.03 in costs, and her counsel represents that he has incurred more than $37,486 in fees and costs since his interim fee application was approved and expects to incur at least $30,000 in fees and costs while the matter is pending before the Ninth Circuit.

III. LEGAL STANDARD

The filing of a notice of appeal "'confers jurisdiction on the court of appeals and divests the [lower] court of its control over those aspects of the case involved in the appeal.'" Neary v. Padilla (In re Padilla), 222 F.3d 1184, 1190 (9th Cir. 2000)(quoting Griggs v. Provident Consumer Discount Co., 459 U.S. 56 (1982). "This judge-made principle is designed to promote judicial economy and

4

prevent the confusion that would result from two courts addressing the same issue." In re Marino, 234 B.R. 767, 769 (B.A.P. 9th Cir. 1999). "A pending appeal divests a bankruptcy court of jurisdiction to vacate or modify an order which is on appeal." Id.

The rule is not absolute, however. The lower court "has jurisdiction to take actions that preserve the status quo during the pendency of an appeal" but "'may not finally adjudicate substantial rights directly involved in the appeal.'" Padilla, 222 F.3d at 1190 (quoting McClatchy Newspapers v. Central Valley Typographical Union No. 46, Int'l Typographical Union, 686 F.2d 731, 734-35 (9th Cir. 1982)). "Absent a stay or supersedeas, the trial court also retains jurisdiction to implement or enforce the judgment or order but may not alter or expand upon the judgment." Id.

IV. ARGUMENT

    A. *Jurisdiction*

The first question is whether Countrywide's appeal has divested this court of jurisdiction over the subject matter of the instant motion.[2]

---

[2] Federal courts have an independent obligation to ascertain that they have subject matter jurisdiction. The jurisdiction which the trial court loses to the appellate court falls in the category of subject matter jurisdiction. See, e.g., In re

5

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 267   Filed 08/29/07   Page 5 of 12

This court does not have jurisdiction to carry out the BAP's mandate. Where the BAP has ordered the bankruptcy court to vacate a judgment and the BAP's order is appealed, the bankruptcy court is "powerless to vacate the judgment and dismiss the proceedings because either would change the status quo." Marino, 234 B.R. at 770; see also In re Mirzai, 236 B.R. 8 (B.A.P. 9th Cir. 1999).; At the hearing on the motion, the Debtor acknowledged that the appeal divests this court of power to order Countrywide to pay back the disputed $79,598.08 to the Debtor or her bankruptcy estate. Instead, the Debtor argues that her request would preserve the status quo while the appeal runs its course.

I conclude that this court has jurisdiction over the subject matter of this motion to the extent the motion requests security from Countrywide to ensure its potential obligation to the Debtor. Such relief, if justified, is aimed purely at preserving the status quo. The status quo that existed at the time of the BAP's mandate was that the Debtor was entitled to recover at least $77,000[3] and possibly more from a solvent mortgage lender. This court has the power to protect the Debtor against developments that would impair Countrywide's ability to pay.

---

Smith Corona Corp., 212 B.R. 59, 60 (Bankr. D. Del. 1997).

[3] Countrywide states that the portion of the attorneys' fees paid to it by the Debtor that were incurred post-petition is about $77,000 rather than the $79,598.08 calculated by the Debtor.

6

"[D]istrict courts have inherent power to issue orders that they deem necessary to ensure the effectiveness of the eventual judgment. . . . If district courts lacked such power, they would be unable to prevent a prevailing party from losing the benefit of a judgment." S&S Sales Corp. v. Marvin Lumber & Cedar Co., 457 F. Supp. 2d 903, 905 (E.D. Wis. 2006).

B. *Necessity of Bond*

The next question is whether the Debtor's ability to recover the attorney fee award is sufficiently in jeopardy to require a bond securing repayment in the event the Debtor prevails before the Court of Appeals. In its initial opposition memorandum, Countrywide argued that no bond was necessary because it is a well-capitalized and financially secure entity with $14.8 billion in shareholders' equity. Countrywide represented that there was "essentially no risk" that it would not be able to pay back the disputed fee award should it have to. Since the opposition was filed, Countrywide has acknowledged grave financial challenges due to disruptions in credit markets amid rising mortgage default rates.

The Debtor asks the court to take judicial notice of various purported "adjudicative facts" regarding Countrywide's current financial situation by way of news articles attached as exhibits to her counsel's declaration. I decline to admit

7

these news articles as evidence of the truth of the matters asserted therein. I will, however, take judicial notice of Countrywide Financial Corp.'s recent filing with the Securities and Exchange Commission concerning its drawing on an $11.5 billion credit facility, necessitated by disruptions in the secondary market for mortgage-backed securities and constrained funding liquidity for the mortgage industry. "SEC filings fall within [the] category of public records that can be judicially noticed." In re Delmarva Securities Litigation, 794 F.Supp. 1293, 1299 (D. Del. 1992). Statements by Countrywide's authorized representatives in the SEC filing fall under the hearsay exclusion for admissions in Rule 801(d)(2) of the Federal Rules of Evidence and therefore may be admitted as evidence of Countrywide's own concerns about the financial challenges it faces. Evidence of Countrywide's stock price is also admissible for the purpose of assessing Countrywide's financial condition and prospects. Fed. R. Evid. 803(17).

The evidence provides sufficient justification for a bond to secure Countrywide's potential obligation to the Debtor. Countrywide admittedly faces unprecedented challenges which have required it to take dramatic actions. Those actions may or may not be successful; the Debtor should not have to bear the risk that Countrywide might not succeed.

U.S. Bankruptcy Court - Hawaii    #04-02511    Dkt # 267    Filed 08/29/07    Page 8 of 12

C.  *Appropriate Amount*

The parties disagree about what amount of security is appropriate for Countrywide's potential obligation to the Debtor. The Debtor initially suggested a bond of $110,000 to secure repayment of $79,598.08 plus interest. The Debtor later increased her request to $250,000, to include the Debtor's own fees that the Debtor will attempt to shift to Countrywide. Countrywide states that it does not object to a supersedeas bond of $90,000, which Countrywide claims would be sufficient to protect any right of the Debtor to recover the post-petition fees paid to Countrywide plus three years of interest. It urges that if it posts a bond, all further proceedings of this court relating to the dispute should be stayed pending the appeal to the Court of Appeals, as contemplated by Fed. R. Bankr. P. 7062. Countrywide also reserves the right to dispute the exact amount of the repayment obligation.

Taking into consideration all relevant factors, I conclude that a bond in the amount of $150,000 is appropriate. The factors that seem most important to me are the following:

- No court has decided whether or to what extent the Debtor's fees are recoverable from Countrywide. This court has granted the unopposed compensation application filed by the Debtor's counsel, but there is a

9

separate question of whether and to what extent she can shift those fees to Countrywide. I express no opinion on that question, one way or the other, but the lack of certainty is relevant to fixing the amount of the bond.

- The BAP has suggested that the 25% limitation on attorneys' fees contained in Hawaii Rev. Stat. § 607-14 might apply. If that is correct, both parties' ability to shift fees would be dramatically limited. See <u>Azizian v. Wilkinson</u>, No. 05-15847 (9th Cir. Aug. 23, 2007) (appellate attorney's fees are "costs on appeal" for purposes of Fed. R. App. P. 7, and "a district court may require an appellant to secure appellate attorney's fees in a Rule 7 bond, but only if an applicable fee-shifting statute includes them in its definition of recoverable costs, and only if the appellee is eligible to recover such fees."

- Countrywide's financial condition is an open question. Mortgage lenders, including Countrywide, have taken a beating in recent weeks. Countrywide has taken the dramatic step of drawing the full amount of unsecured credit lines in the amount of $11.5 billion. This action may have improved Countrywide's financial condition (by putting $11.5 billion of cash in Countrywide's coffers in exchange for an unsecured payment obligation), but Countrywide may have taken action now because it feared that its lenders would cut off the credit lines if Countrywide did not draw on them

immediately. In addition, Countrywide's stock has fallen significantly, suggesting that investors' confidence in the company has been shaken. Nevertheless, Countrywide remains a large company with significant resources. There remains a chance that the bond will be unnecessary.

- There are limits on the power of a federal court to grant prejudgment relief to unsecured creditors. <u>Grupo Mexicano de Desarrollo, S.A., v. Alliance Bond Fund, Inc.</u>, 527 U.S. 308 (1999). <u>Grupo Mexicano</u> is not directly applicable to these facts, because the limited bond requested here is nothing like the global seizure order rejected in <u>Grupo Mexicano</u>, and because the courts' supersedeas powers have deep roots in American law. But courts must always be careful to use their powers only as needed.

Weighing these and other factors, I conclude that a bond of $150,000 would provide sufficient protection to the Debtor.[4] As contemplated by Rule 7062(d) and the rule of exclusive appellate jurisdiction, further proceedings in this court relating to the attorney fee dispute between the Debtor and Countrywide will be stayed pending the Ninth Circuit appeal. The court reserves for later

---

[4]This amount is not arbitrary. It is approximately equal to the post-petition fees which the Debtor paid to Countrywide (almost $80,000) plus 25% of the amount in controversy (Countrywide's claim of about $170,000 plus the paid fees of almost $80,000). This amount, however, may bear little if any resemblance to the final result. Nothing in this decision constitutes, or necessarily foreshadows, an ultimate decision on any of the underlying issues, all of which will be decided if and when the bankruptcy court regains jurisdiction.

11

determination the disputes over the Debtor's entitlement to interest and the exact amount of attorneys' fees that Countrywide would be obligated to pay if the BAP's mandate stands.

V.  CONCLUSION

Based on the foregoing, Countrywide shall post a supersedeas bond in the amount of $150,000 within the next seven days.[5]  Further proceedings relating to the attorney fee dispute between the Debtor and Countrywide are stayed pending Countrywide's appeal.



/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **08/27/2007**

---

[5] Countrywide suggests that the period should be 21 days, but Countrywide gives no reason for that suggestion, and the period is too long given the rapid developments in the mortgage lending industry.