UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| In re | Case No. 04-02511 |
|---|---|
| LEHUA HOOPAI, | Chapter 13 |
| Debtor. | Related Docket No.: 254 |

## MEMORANDUM OF DECISION ON MOTION
## REGARDING ATTORNEYS' FEES AND COSTS[1]

The relevant facts are found in three decisions: In re Hoopai, 348 B.R. 528 (Bankr. D. Haw. 2006), vacated, 369 B.R. 506 (B.A.P. 9th Cir. 2007), reversed in part and affirmed in part, 581 F.3d 1090 (9th Cir. 2009).

Countrywide's Preconfirmation Fees under Section 506(b). The Ninth Circuit held that the Debtor's mortgage lender, Countrywide Home Loans, Inc. ("Countrywide"), is entitled to its reasonable attorneys' fees incurred prior to confirmation of the Debtor's chapter 13 plan on February 23, 2005, and that section 506(b) of the Bankruptcy Code preempts any state law that might limit Countrywide's recovery.

---

[1] The court has not selected this decision for publication.

Countrywide argues that I have already decided the reasonable amount of its fees for the preconfirmation period. But the BAP vacated that decision, specifically questioning my assessment, and the Ninth Circuit affirmed that part of the BAP's decision. My prior decision is therefore inoperative.

The Debtor claims that Countrywide's fees should be limited to an amount that would be reasonable for prosecuting a "garden variety" motion for relief from the automatic stay, and should not include the additional amounts that Countrywide spent litigating the issue of whether the property belonged to the bankruptcy estate. I disagree. It was the Debtor, not Countrywide, who injected a novel issue into this case. It was the Debtor, not Countrywide, who chose to file a chapter 13 petition after a nonjudicial foreclosure sale had been held and after the high bidder in that sale had paid the full sale price. Prior to this case, there was no reported opinion that decided whether, under Hawaii law, the debtor retained an interest in the foreclosed property at that late date. In short, the Debtor's decisions insured that this would not be a "garden variety" case.

The BAP stated, and the Ninth Circuit apparently agreed, that there was never any serious doubt that Countrywide would be paid in full because the debtor had a pending sale of the property for $300,000. I respectfully disagree with this factual assertion. The reasonableness of Countrywide's choices should be assessed in light

2

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 322   Filed  01/04/10   Page 2 of 14

of the information that was available at the time. At the time, Countrywide knew that it was dealing with a borrower who was seriously delinquent and who was willing to take unreasonable steps to obstruct Countrywide's foreclosure (the Debtor's pro se chapter 11 case, which had many of the hallmarks of a bad faith filing). The proposed sale was not a typical arms' length sale; the buyer and the Debtor had a prior relationship, and the Debtor had given the buyer possession of the property long before closing. The buyer's ability to close the sale was unknown; the buyer had made a down payment of only $1,000 against a $300,000 purchase price, and there was no evidence about her ability to obtain a mortgage loan for the balance. Based on the available information, I was uncertain, and Countrywide could reasonably have doubted, that the sale would actually occur. Of course, the sale did close, but Countrywide could not have known that when it was making its litigation decisions, and it would be unreasonable to judge Countrywide's conduct based on hindsight.

According to the timesheets, Countrywide incurred legal fees and costs of $46,115.57 prior to the confirmation date. The Debtor argues that the fees and costs must be limited to $36,143.31, the amount set forth in Countrywide's proof of claim. The amount sought in the proof of claim may actually have been higher, because there is another line item labeled "fees due" for a total of $6,246.19. In any

3

U.S. Bankruptcy Court - Hawaii    #04-02511    Dkt # 322    Filed 01/04/10    Page 3 of 14

event, Countrywide could probably amend its proof of claim to state the higher amount of fees and costs reflected in the timesheets, so the proof of claim is not binding.

The fees and costs set forth in the timesheets appear largely reasonable, with one exception. Between October 25 and 28, 2004, Countrywide's counsel spent many hours preparing and revising the mortgagee's affidavit of sale. The total amount of time spent on this task is hard to discern because counsel were working on other tasks at the same time, but it seems to have been at least 13.8 hours. This was an inordinate amount of time to spend on a relatively routine task. At the hearing, Countrywide's local counsel explained that they had to gather and reconcile information from the service providers who had actually conducted the foreclosure. Based on this explanation, I accept that Countrywide's counsel had to do this work as a matter of professional responsibility to the client, but I do not accept that the Debtor should reimburse Countrywide for this amount. The Debtor should not pay more because Countrywide had an inefficient system for complying with the requirements of the foreclosure statutes. I will therefore reduce Countrywide's request by $1,000 and award Countrywide preconfirmation attorneys' fees and costs of $45,115.57.

<u>The Debtor's Entitlement to Postconfirmation Fees from Countrywide</u>. The

4

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 322   Filed 01/04/10   Page 4 of 14

BAP held that the Debtor was the "prevailing party" within the meaning of Haw. Rev. Stat. § 607-14. The Ninth Circuit affirmed this ruling. The Debtor is therefore entitled to a reasonable attorneys' fee.

The Debtor claims fees of $160,375.38 plus additional fees reasonably incurred in prosecuting this motion after October 13, 2009. Neither Countrywide nor Maluhia claim that the hourly rates are unreasonable or that any of the specific time entries is overstated or unnecessary. Countrywide argues, however, that certain categories of work are not compensable.

*First*, Countrywide argues that it should not pay the Debtor's fees incurred in Maluhia's appeal to the district court. Countrywide points out that it was not an appellant and did not file briefs. Countrywide argues that it was not a losing party against which fees may be charged under section 607-14. I disagree. Although Countrywide did not file a brief, Countrywide did participate in the appeal by monitoring it, having its counsel confer with Maluhia's counsel, and participating in conferences with a magistrate judge concerning the appeal. Further, the Hawaii courts treat an appeal as a continuation of the original action. Leslie v. Estate of Tavares, 93 Haw. 1, 4, 994 P.2d 1047, 1050 (2000). Countrywide was a losing party in this court on the issue that was appealed. Countrywide continued to be a losing party on appeal even though another party took the active role in prosecuting

5

U.S. Bankruptcy Court - Hawaii    #04-02511    Dkt # 322    Filed  01/04/10    Page 5 of 14

the appeal.

*Second*, Countrywide argues that it should not pay for work done on issues on which the Debtor did not prevail. Hawaii law does not support this argument. As the Ninth Circuit held in this case, section 607-14 does not require the court to parse the issues and award fees only for those issues on which the party prevailed. Rather, the court must determine who prevailed on balance and then assess a reasonable fee for all of the services provided.

*Third*, Countrywide argues that it should not pay the fees which the Debtor's counsel has placed in the category of "case administration," because those services dealt with the normal prosecution of a chapter 13 case and not to any dispute with Countrywide. I agree with the principle but not with the computation. This chapter 13 case was almost entirely driven by the dispute with Countrywide and Maluhia. Almost all of counsel's time was spent on that dispute. I have reviewed the timesheets again, however, and I conclude that the following amounts should be deducted because the services were not related to the dispute with Countrywide and Maluhia:

| Date | Hours | Extended |
| --- | --- | --- |
| 2/9/05 | 1.5 | $ 75.00 |

6

| Date | Hours | Amount |
|---|---|---|
| 2/10/05 | .5 | $ 37.50 |
| 2/11/05 | .4 | $ 20.00 |
| 2/17/05 | .5 | $ 105.00 |
| 2/18/05 | .4 | $ 84.00 |
| 4/27/05 | .1 | $ 21.00 |
| 12/7/05 | .2 | $ 42.00 |
| 12/20/05 | .3 | $ 75.00 |
| 12/28/05 | 1.1 | $ 231.00 |
| 2/27/06 | .2 | $ 42.00 |
| 9/13/06 | .8 | $ 168.00 |
| 9/26/06 | .2 | $ 42.00 |
| 7/17/07 | .2 | $  42.00 |
|  |  | $ 984.50 |

*Fourth*, Countrywide argues that, under section 607-14, the Debtor's attorneys' fees may not exceed "twenty-five percent of the judgment." The twenty five percent limit does not apply, however, "in cases that involve only an

7

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 322   Filed  01/04/10   Page 7 of 14

adjudication of rights in which no monetary liability is in issue." DFS Group L.P. v. Paiea Properties, 110 Haw. 217, 221, 131 P.3d 500, 504 (2006). The Ninth Circuit has ruled that "the 'principle issues raised by the pleadings and proof' were whether Hoopai retained her interest in the property following the foreclosure auction, and whether she should be allowed to sell the house to [her buyer]." Hoopai, 581 F.3d at 1103. These issues "involve only an adjudication of rights in which no monetary liability is in issue." Id. Therefore, the twenty five percent cap does not apply.

*Fifth*, Countrywide argues that the prevailing party cannot recover fees under section 607-14 for prosecuting a fee request. No Hawaii decision addresses this specific issue. I hold that the Hawaii courts would allow a reasonable fee for prosecuting a fee application under section 607-14. The purpose of allowing a recovery of fees under section 607-14 is to ensure that litigation costs do not diminish the prevailing party's recovery and deprive the prevailing party of full compensation. Disallowing a reasonable fee for prosecuting the fee request would disserve this purpose. The Hawaii courts would scrutinize such a request with special care, however, because of the risk of "churning." I have done so and I find that all of the services performed were necessary and all of the time expended was reasonable.

*Sixth*, Countrywide argues that the terms of the promissory note and mortgage do not permit a recovery of fees incurred in prosecuting a fee request. I disagree. Countrywide's note permits the recovery of attorney's fees for enforcing the note. Section 607-14 makes this provision reciprocal for the Debtor's benefit. Collecting the fees owed under the note is included in the phrase "enforcing the note."

The Debtor's counsel filed a fee application for the period ending on September 9, 2006. Countrywide received notice of the application and did not object. I found that the fees requested, in the amount of $69,153.05, were reasonable, and approved the application (docket no. 248). The Debtor's counsel has filed a second fee application for the period from September 9, 2006, through October 13, 2009, in the amount of $94,804.25. Countrywide received notice of this application and submitted no objection. I have carefully scrutinized all of the timesheets and I find that, except for the deduction discussed above of $984.50, the requested amounts are all reasonable, considering (among other relevant factors) the long odyssey of this case through this court and the appellate courts, the fact that counsel succeeded against long odds and heavy opposition, and the fact that the amounts requested by the Debtor's counsel compare favorably with those paid to Countrywide's counsel for litigating the other side of the same case. Therefore, the Debtor is entitled to recover fees and costs from Countrywide in the amount of

9

U.S. Bankruptcy Court - Hawaii    #04-02511    Dkt # 322    Filed  01/04/10    Page 9 of 14

$162,972.80, plus any additional amount accrued after October 13, 2009. The Debtor's counsel shall file a declaration with supporting timesheets for the additional amounts within fourteen days after the entry of this decision. Countrywide may respond to the declaration within seven days after it is filed.

<u>The Debtor's Entitlement to Fees from Maluhia</u>. Section 607-14 authorizes fee shifting "in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee . . . ."

As between the Debtor and Maluhia, there is no promissory note or other contract in writing. Arguably, Maluhia's successful bid at the auction created a contract between Maluhia and the Debtor (through Countrywide, acting as the Debtor's agent under the power of sale granted in the mortgage). But any such contract was not in writing and did not provide for an attorney's fee.

An action is "in the nature of assumpsit" when it seeks money damages for breach of an express or implied contract. <u>Leslie</u>, 93 Haw. at 5, 994 P.2d at 1051 ("assumpsit is a common law form of action which allows for the recovery of damages for the non-performance of a contract"). An action which is predicated on a contract, but primarily seeks nonmonetary relief, is not 'in the nature of assumpsit'." <u>Chock v. Government Employees Insurance Co.</u>, 103 Haw. 263, 268, 81 P.3d 1178, 1183 (2003) ("[a]n action that seeks only a declaration as to a party's

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 322   Filed 01/04/10   Page 10 of 14

rights or responsibilities, even if factually implicating a contract, is not 'in the nature of assumpsit.'"); Leslie, 93 Hawai'i at 7, 994 P.2d at 1053 (an attempt to set aside a settlement agreement is not an "action in the nature of assumpsit"); Lee v. Aiu, 85 Haw. 19, 31-32, 936 P.2d 655, 667-8 (1997) (a suit for specific performance of a contract is not an "action in the nature of assumpsit," even if the plaintiff seeks damages as an alternative remedy); Civic Realty, Inc.v. Development, Inc., 3 Haw. App. 101, 102 (1982) (an action to reform a contract is not "in the nature of assumpsit").

Maluhia did not seek monetary damages from the Debtor. Its primary goal was to establish that it was entitled to buy the property. This was not an "action in the nature of assumpsit." Therefore, Maluhia (and its surety on the supersedeas bond) are not responsible for the Debtor's attorneys' fees.

<u>Allocation of the Rent Trust Fund</u>. When Maluhia sought a stay pending its appeal of my order determining that the property was property of the estate, I (with the assistance of the parties) formulated a set of requirements that were intended to ensure that the prevailing party could recover any damages resulting from the delay incident to the appeal.

According to the Debtor, her damages during the term of the stay were $14,479.65. Maluhia presents three objections to this request.

*First*, Maluhia argues that this sum must be reduced by the amount of rent paid during the term of the stay. I agree with Maluhia.

The purpose of compensatory damages is to restore the prevailing party as nearly as possible to the position which he or she would have occupied if there had been no stay and no delay. In this case, if there had been no stay, the Debtor would have closed the sale promptly after it was approved. Because of the stay, the sale did not close until much later. In the meantime, the Debtor incurred expenses associated with ownership of the property, such as maintenance costs, insurance premiums, real property taxes, and interest on the Countrywide loans. During the same period, the Debtor also received a benefit from the ownership of the property – rental proceeds from her buyer, who she allowed to take possession before the sale was approved.

It is a bedrock principle that compensatory damages should be the amount needed to compensate the victim for the victim's net loss, and that, in order to avoid overcompensating the victim, the victim's gains (if any) must be netted against the losses. Here, the Debtor suffered losses because of the delayed sale, but she also realized an offsetting gain. She is entitled to recover her net loss, no more and no less. This means that her expenses must be reduced by the rental proceeds.

The cases cited by the Debtor in support of her position are not exactly on

U.S. Bankruptcy Court - Hawaii   #04-02511   Dkt # 322   Filed 01/04/10   Page 12 of 14

point, not controlling, and not persuasive.

*Second*, Maluhia argues that the period for computation of the damages should begin on February 16, 2005, when this court imposed the stay, and end on November 25, 2005, when the district court affirmed the order. The Debtor argues that the relevant period begins on February 1, 2005, when the court approved the sale, and ends on January 31, 2006, when the sale actually closed. I agree with the Debtor for the most part. The relevant period should begin on February 16, 2006, when the stay went into effect and the sale would have closed but for the stay. The Debtor could not have closed the sale before that date in any event. The period should end on the actual closing date. The Debtor could not have closed the sale on the very day of the district court's decision. The delay caused by Maluhia's appeal necessarily lasted longer than that. There is no suggestion that the Debtor unreasonably delayed the closing of the sale after the appeal was decided. The period for computation of damages should therefore run until the sale actually closed.

*Third*, Maluhia argues that it should get credit for taxes and insurance premiums on the property that it paid. The Debtor argues that Maluhia could never have had a reasonable belief that it owned the property, that Maluhia paid these amounts as a volunteer, and that the payments should be disregarded. Maluhia is

13

correct. The Debtor's damages should not include any expenses that Maluhia already paid. Maluhia's motive for making the payment is irrelevant.

Therefore, the damages caused by the stay are:

| | |
|---|---:|
| Mortgage interest | $ 11,045.84 |
| Real property taxes, insurance premiums, repairs, and other charges | 2,482.05 |
| Rents collected | -8,680.31 |
| Expenses paid by Maluhia | <u>-893.66</u> |
| Balance due from Maluhia | $ 3,953.92 |

Counsel for the Debtor shall submit an appropriate judgment.



/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 01/04/2010